**CLEVELAND (City), Plaintiff-Appellee, v. GORMAN et, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21432.   Decided November 14, 1949.

Lee C. Howley, Director of Law, James M. McSweeney, Asst. Director of Law, Cleveland, for plaintiff-appellee.

Frank T. Cullitan, County Pros., R. W. Edwards, Asst. County Prosecutor, Cleveland, for defendants-appellants.

## OPINION

By McNAMEE, J:

This appeal is from a judgment of the Common Pleas Court in favor of the City of Cleveland (hereinafter referred to as the 'City') and against the Board of County Commissioners of Cuyahoga County (hereinafter referred to as the 'Commissioners') in the sum of $1,442,165.37. The judgment represents the amount expended by the City for the care, main-

tenance, education and support of delinquent children committed by the Juvenile Court of Cuyahoga County to Hudson. Boys Farm School from August 19, 1937 to August 31, 1947, and to Blossom Hill School for Girls from October 31, 1949 to April 30, 1945. Both of these institutions are now and since their establishment have been owned and operated by the City and supported by taxes raised by the municipality.

The issue presented by this appeal is whether under the provisions of §1639-34 GC, and §1639-57 GC, the Commissioners. are liable for expenditures made by the City for the care, maintenance, support and education of delinquent children. committed by Juvenile Court to correctional institutions of the municipality where no appropriations of county funds have been made by the Commissioners or requested by the Juvenile Court for such purposes and where the Juvenile Court has neither authorized nor approved payment of such: expenditures to the City.

The facts are not in dispute. More than forty years ago the City established a boys farm at Hudson, Ohio. Several years later Blossom Hill School for Girls was established by the City at Independence, Ohio. Throughout the years these institutions have been used exclusively for the custodial care, reformation and discipline of wayward boys and girls committed thereto by the Juvenile Court of Cuyahoga County.

The Bureau of Inspection and Supervision of Public Offices: made findings against the Commissioners in favor of the City for the cost of operating and maintaining these institutions in the amounts and for the periods hereinabove noted. The findings of the Bureau are based upon Attorney General's Opinion No. 4228 (1941) in which it was held that §1639-34 GC, and §1639-57 GC (effective Aug. 19, 1937) imposed upon Cuyahoga County the duty of bearing the expenses of the care, maintenance, education and support of delinquent children committed to correctional institutions of the City since the effective date of the new Juvenile Court. Act.

Sec. 1639-57 GC reads:

"**Appropriation for expenses of the Court and maintenance** **etc., of children:** It is hereby made the duty of the county commissioners to appropriate such sum of money each year as will meet all the administrative expense of the court exercising the powers and jurisdiction conferred in this chapter, including reasonable expenses of the judge and probation officers in attending conference at which juvenile or welfare

problems are discussed, and such sum each year as will provide for the care, maintenance, education and support of the neglected, dependent and delinquent children, other than children entitled to aid under the aid to dependent children law, §1359-31 et seq, GC, and for necessary orthopedic, surgical and medical treatment, and special care as may be authorized by such court for any neglected, dependent or delinquent children as herein provided. All disbursements from such appropriations shall be upon specifically itemized vouchers, certified to by the judge of the court." (effective 8-19-37)

The only duty imposed upon the Commissioners by the above quoted section is to appropriate the funds required by the Juvenile Court for the various purposes referred to therein. That duty has been performed.

Sec. 2460 GC provides:

"No claims against the county shall be paid otherwise than upon the allowance of the county commissioners, upon the warrant of the county auditor, except in those cases in which the amount due is fixed by law **or is authorized to be fixed by some other person or tribunal,** in which case it shall be paid upon the warrant of the county auditor, **upon the proper certificate of the person or tribunal allowing the claim.** No public money shall be disbursed by the county commissioners, or any of them, but shall be disbursed by the county treasurer, upon the warrant of the county auditor, specifying the name of the party entitled thereto, on what account and upon whose allowance, if not fixed by law." (Emphasis supplied.)

The Commissioners possess no authority to approve or allow claims against the County on account of any of the matters referred to in §1639-57 GC, and it is manifest that the Juvenile Court is the only "person or tribunal" empowered to incur obligations on behalf of the County for such purposes.

The last paragraph of §1637-34 GC which is pertinent reads:

"Any expenses created by the court for the care, maintenance and education of dependent, neglected or delinquent children or for orthopedic, medical or surgical treatment or special care of such children under the provisions of this chapter, except such part thereof as may be paid by the state

or federal government, **shall be paid** from the county treasury **upon specifically itemized vouchers certified to by the judge of the court."** (Emphasis supplied.)   (effective 8-19-37)

The foregoing section also provides that the Juvenile Judge may order parents who are financially able to do so, to pay the expenses incident to the care of children committed by the court. The record discloses that some payments were made by parents of children committed to the Municipal institutions and that these payments were received by the City.

In his opinion, the Attorney General reasons that by virtue of the terms of the last paragraph of §1639-34 GC, quoted above, all expenses not borne by parents of children committed to Municipal correctional institutions must be paid out of the county treasury. Reduced to the terms of a syllogism, the reasoning of the Attorney General may be stated as follows:

Major Premise:—the last paragraph of §1639-34 GC imposes the liability upon the County for all expenses connected with the care, maintenance, support and education of children committed by Juvenile Court except such part thereof as may be paid by the state or federal governments. Minor Premise: —the City paid the expenses resulting from the commitment by Juvenile Court of delinquent children to the Hudson Boys Farm and Blossom School for Girls, no part thereof being paid by the state and federal governments. Conclusion:— the City is entitled to reimbursement from the County for such expenses. The conclusion is wrong because the Major Premise is wrong. This may be demonstrated by a consideration of the strange and unusual circumstances that would follow from an acceptance of the Attorney General's conclusion as valid.

Sec. 1639-30 GC (effective August, 1937) which enumerates the institutions to which neglected and dependent children may be committed, reads:

"2. Commit the child to a suitable public institution or agency or to a suitable private institution or agency incorporated under the laws of the state, approved by the state department of public welfare and authorized to care for children or to place them in suitable family homes."

By the terms of the foregoing section, the Juvenile Judge may commit delinquent children to institutions supported by

private charity as well as to those maintained by public funds. It is a matter of general knowledge that the Juvenile Judge frequently makes commitments to such private institutions. If, by virtue of the terms of §1639-34 GC a municipality is entitled to reimbursement of expenses resulting from the commitment of children to its correctional institutions by the Juvenile Judge, then under similar circumstances all the private charitable institutions to which such children are committed also would be entitled to reimbursement for the expenses resulting therefrom.

Sec. 1639-34 GC makes no reference to either private or public institutions, consequently it makes no distinction between them. No preferential right to payment is granted to municipalities. If the County is liable for all expenses (except that part paid by the state and federal governments) it is liable to all institutions who have been put to expense by reason of the commitment of neglected, dependent and delinquent children thereto by the Juvenile Court. This would impose upon counties the enormous ·financial burden heretofore voluntarily assumed by the numerous private and public charitable institutions throughout the State. Manifestly no such radical legislative purpose can be read into the language of the statute.

"The legislature will not be presumed to have intended to enact a law producing unreasonable consequences." **37 O. Jur. 644.**

The plain and evident purpose of the statute is to obligate the County only for such expenses as are authorized and approved by the Judge of the Juvenile Court.

Any ambiguity in the language of the 1937 Act that may have cast doubt upon the legislative purpose in this regard was dispelled by the amendment of September 5, 1941. As noted above, §1639-34 GC in' its original form provided that "any expense **created** by the court * * * shall be paid out of the county treasury." The 1941 amendment substituted the word "ordered" in lieu of "created" thus clarifying the intent of the legislature that payments out of the county treasury were to be made only for such expenses as were authorized by the judge of the Juvenile Court. In the context of the original statute, the word "created" may be understood in the sense of "authorized." It is in this sense that the word "ordered" is used in the amendment.

"The presumption is that every amendment of a statute is made to effect some purpose. * * * That purpose may be either to alter the operation and effect of earlier provisions or to clarify the meaning thereof." **37 O. Jur. 769; Thomas v. Huesman 10 Oh St 152; Knox County v. McComb, 19 Oh St 320; Cincinnati v. Holmes, 56 Oh St 104,** 46 N. E. 514; **Lytle v. Baldinger, 84 Oh St 1,** 95 N. E. 389. Ann. Cas. 1912b 894.

There can be no doubt that the amendment was intended to and did clarify the meaning of the language of the 1937 Act. Additional proof of this is to be found in the following sentence which was added to §1639-34 GC by the amendment of Sept. 5, 1941:

"The court shall not be responsible for any expense resulting from the commitment of children to any home, welfare board or other institution, association or agency, **unless such expense has been authorized by the court at the time of commitment.**" (Emphasis supplied.)

This portion of the amendment in clear and positive terms makes the authorization of the Juvenile Court at the time of commitment a condition precedent to the accrual of liability against the County for expenses resulting from the commitment of children to any institution.

In both the original act, and the amendment to §1639-34 GC, as well as in §1639-57 GC, certification by the Juvenile Judge of "specifically itemized vouchers" is an essential prerequisite of payment out of the County treasury. It does not appear that such vouchers covering the expenses resulting from the commitment of children to the Hudson Boys Farm and the Blossom Hill School for Girls were certified for payment by the Juvenile Judge nor does it appear that such expenses were "'created" by the Court. There is no evidence of any authorization of such expenses by the Court concurrently with the commitment of delinquent children since the effective date of the 1941 amendment. The absence of these essential elements of a valid claim against the County is conclusive against the right of the City to reimbursement.

**State ex rel Clark v. Board of County Commissioners, 131 Oh St 16,** lends no comfort to the cause of the City. That case involves an action in mandamus in which the Supreme Court held that it was the duty of the Commissioners to appropriate a sum of money sufficient to meet the admin-

istrative expenses of Juvenile Court. No question of the liability of the County for expenses resulting from the commitment of delinquent children was involved. It is of interest, however, that Judge Zimmerman in commenting upon the purpose of §1639-57 GC said:

"In recent years there has been an increasing solicitude on the part of the State for wayward, unfortunate and neglected children. Through legislative action the Juvenile Court has been made responsible to an important extent for improving the environment and surroundings of these potential citizens and to correct unfavorable conditions besetting them, not only for the advantage of the individual child but for the benefit of the state as well." (State ex rel Clark v. Board of County Commissioners, at page 18.)

The views herein expressed are in harmony with the foregoing observations of the Supreme Court. The legislature has granted to the Juvenile Court authority commensurate with its enlarged responsibility for the welfare of neglected, dependent or delinquent children. The court may obligate the county for the payment of expenses necessary to the proper discharge of its responsibility but it is not contemplated that such action will be taken where the welfare of such children is subserved adequately by their commitment to private or municipal institutions that voluntarily assume the expenses resulting therefrom.

We are of the opinion and hold that the county is not liable for expenses resulting from the commitment of delinquent children to correctional institutions of the City unless such expenses have been authorized and approved by the Juvenile Judge at the time and in the manner specified in §1639-34 GC.

For the reasons hereinabove stated the judgment of the Common Pleas Court is reversed and final judgment is entered for defendants appellants. Exc. Order see journal.

SKEEL, PJ, HURD, J, concur.